[Cite as *State v. Kiger*, 2015-Ohio-3951.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 14 BE 34 |
| V. | ) | |
| | ) | OPINION |
| BENJAMIN D. KIGER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:        Criminal Appeal from County Court, Western Division of Belmont County, Ohio
Case No. 14 CRB 00260

JUDGMENT:        Affirmed

APPEARANCES:
For Plaintiff-Appellee        Helen Yonak
Assistant Prosecutor
Belmont County Court Annex
St. Clairsville, Ohio 43950

For Defendant-Appellant        Attorney Theodore L. Tsoras
P.O. Box 150
54491 Lysien Road
Powhatan Point, Ohio 43942

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: September 25, 2015

DONOFRIO, P.J.

{¶1} Defendant-appellant, Benjamin Kiger, appeals from a Belmont County Court, Western Division judgment convicting him of assault.

{¶2} Appellant is a former employee of ResCare, a group home for severely mentally disabled adults. Appellant worked for ResCare for approximately seven months. Early in the morning of April 26, 2014, Betty Dowdle, another caregiver, reported appellant to their supervisor alleging appellant had been abusive toward one of their clients named Tommy.

{¶3} According to Dowdle, appellant became cross with Tommy and started swearing at him. She stated Tommy got mad and started to move toward appellant. Dowdle stated that appellant grabbed a can of air freshener and sprayed it in Tommy's face. Dowdle stated that she wiped Tommy's face and eyes. Appellant walked away and Tommy retrieved the air freshener and threw it at appellant. Dowdle said that appellant then sprayed Tommy again two more times. She stated that Tommy was upset. Dowdle said that appellant then shoved Tommy over onto his back. Ten minutes later, Dowdle stated, appellant pushed Tommy over again. She reported appellant's conduct to their supervisor and the police were called.

{¶4} A complaint was filed against appellant charging him with one count of assault, a first-degree misdemeanor in violation of R.C. 2903.13(A).

{¶5} The trial court held a bench trial and found appellant guilty as charged. It sentenced appellant to 90 days in jail, all of which it suspended on the conditions that appellant pay a $250 fine and costs of $105, serve two years of probation, and not be employed in the health care industry in the capacity of aiding physically or mentally handicapped persons.

{¶6} Appellant filed a timely notice of appeal on August 14, 2014.

{¶7} Appellant now raises a single assignment of error that states:

THE TRIAL COURT'S FINDING THE DEFENDANT-APPELLANT GUILTY OF ASSAULT UNDER OHIO R.C. §2903.13 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} Appellant argues his conviction is against the manifest weight of the

evidence. He claims plaintiff-appellee, the State of Ohio, failed to present evidence that he was aware that his conduct would probably cause a certain result or would result in physical harm. He claims there was no evidence that he was aware his conduct would probably result in an injury, illness, or psychological impairment to Tommy, nor was there any evidence that he caused an injury, illness, or psychological impairment to Tommy. And appellant points out the court found that "an assault was potentially committed." He argues this finding demonstrates that at most he "potentially" committed an assault, not that he did commit an assault. Finally, appellant asserts the trial court's finding that any unwanted touching equates to an assault is misguided.

{¶9} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶10} *Thompkins* addressed a manifest weight argument in the context of a jury trial. But the standard of review is equally applicable when reviewing a manifest weight challenge from a bench trial. *State v. Layne*, 7th Dist. No. 97 CA 172, 2000 WL 246589, at *5 (Mar. 1, 2000). A reviewing court will not reverse a judgment as being against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Hill*, 7th Dist. No. 09-MA-202, 2011-Ohio-6217, ¶49, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988).

**{¶11}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

**{¶12}** The court convicted appellant of assault in violation of R.C. 2903.13(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." A person acts "knowingly," regardless of his purpose, when he acts with awareness that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22. An "attempt" is to engage in conduct that, if successful, would result in the offense. R.C. 2923.02(A). And "physical harm" includes any injury, illness, or other physiological impairment, regardless of its gravity or duration. R.C. 2901.01(A)(3).

**{¶13}** Thus, we must consider the evidence and determine whether it supports all of the elements of assault.

**{¶14}** The state presented two witnesses, Dowdle and her supervisor Dawn Myers. Dowdle testified first.

**{¶15}** Dowdle stated that on the morning in question, Tommy got up and wanted a bath and it was appellant's responsibility to help him. (Tr. 6). Instead of helping, appellant told Tommy to do it "his F'ing self." (Tr. 6). Dowdle stated Tommy got mad when appellant would not help him. (Tr. 6). She helped Tommy with his bath. (Tr. 6). When Tommy was done, he was "kind of cussing" at appellant and appellant told him to "F off." (Tr. 7). Tommy got mad and began to come towards

appellant. (Tr. 7). Dowdle testified that appellant grabbed an air freshener bottle and sprayed Tommy in the face three times. (Tr. 7). She stated Tommy said "done, done" and wiped air freshener from his tongue. (Tr. 7). She wiped off his eyes and face. (Tr. 8).

{¶16} Dowdle testified that appellant then put the air freshener down in the kitchen and Tommy retrieved it and threw it at appellant. (Tr. 8). Appellant then sprayed him two more times. (Tr. 8). Dowdle stated Tommy was still upset and appellant shoved him over with his hand to Tommy's forehead. (Tr. 9). Ten minutes later, Dowdle testified, appellant shoved Tommy over backwards again. (Tr. 9). She stated Tommy sits with his legs backwards and appellant's shoves had to hurt Tommy because his legs were pinned backwards. (Tr. 9-10).

{¶17} Dowdle stated appellant then got a call and left the area. (Tr. 10). She immediately called a supervisor and advised the supervisor of what had happened. (Tr. 10).

{¶18} Dawn Myers, ResCare's clinical supervisor, was the state's other witness. Myers testified that she questioned appellant shortly after the incident. (Tr. 24). Appellant told Myers that he had sprayed some air freshener towards Tommy to make him laugh. (Tr. 24). Appellant denied cursing at Tommy. (Tr. 24). Myers stated the police then arrived. (Tr. 24). She stated that appellant told the police that he thought he remembered cursing at Tommy. (Tr. 25). Appellant also told the police that he had sprayed air freshener to make Tommy laugh. (Tr. 25). And he told the police that he had "tipped" Tommy. (Tr. 25). Myers stated that "tipping" is not a practice that is used at ResCare. (Tr. 25). Myers testified that appellant explained to the police that he had taken Tommy by both shoulders and pushed him backwards onto the ground onto his back. (Tr. 25). She stated appellant told police he had "tipped" Tommy a few times and he thought it would make him laugh. (Tr. 25).

{¶19} Myers testified that Tommy cannot fall backwards on his own because he has "contractures" to both legs, which means that his legs are always in a bent position with his knees touching and his legs stiff. (Tr. 28-29). She stated it would take a lot of effort for him to "flop backwards." (Tr. 29).

{¶20} Appellant testified in his own defense. He stated that during his seven-month tenure at ResCare, he had taken a special liking to Tommy and Tommy referred to him as his "buddy." (Tr. 34-35).

{¶21} On the morning in question, appellant stated, Tommy asked for a bath and appellant asked him to get the bath himself. (Tr. 37). He stated this was in order to build up Tommy's independence according to his goals. (Tr. 37). Appellant testified Tommy became angry and tried to hit him. (Tr. 37). Tommy then threw a bottle of air freshener at him. (Tr. 37). Appellant stated he took the bottle and sprayed it "around" Tommy, not directly at him. (Tr. 37). He stated Tommy was laughing at it. (Tr. 38). He testified that spraying the air freshener around Tommy was something he had done in the past to make Tommy laugh. (Tr. 40).

{¶22} Appellant stated Tommy then said "new one" because he needed a new adult diaper. (Tr. 38). Appellant asked Tommy to lie down. (Tr. 38). Appellant testified that Tommy will sit on the floor and then fall onto his back from a sitting position and bring his legs out from under him so that a caregiver can change him. (Tr. 38). He stated that Tommy does this in a violent way. (Tr. 38). Appellant testified that he would put his hands behind Tommy's back or grab Tommy's arms in order to help him lower himself to the ground. (Tr. 38). He stated he did not push Tommy down but instead he controlled how quickly Tommy hit the ground. (Tr. 39). Appellant testified he did not intend to harm Tommy. (Tr. 46).

{¶23} Appellant also testified regarding his past employment with Dowdle. He testified that he used to work as a shift manager at Wendy's when Dowdle and her son were employees there. (Tr. 43-44). He stated that he wrote Dowdle a reprimand for eating while she was supposed to be making sandwiches and that she and her son were eventually fired. (Tr. 44).

{¶24} This case involves two very different versions of what occurred on April 26, 2014. According to Dowdle, after appellant cursed at Tommy and sprayed air freshener in Tommy's face, he forcefully shoved Tommy onto his back twice. According to appellant, he sprayed the air freshener near Tommy in an effort to get him to laugh and then assisted Tommy onto his back so that he would not injure

himself. There were no other witnesses to the events in question.

**{¶25}** The trial court in this case clearly found Dowdle's testimony to be more credible. It found appellant assaulted Tommy when appellant pushed him. The court did state at one point that an assault was "potentially" committed, but it then went on to find that "an assault was committed." (Tr. 52).

**{¶26}** As an appellate court, we are permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence. *State v. Wright*, 10th Dist. No. 03AP-470, 2004-Ohio-677, ¶11. But we must give great deference to the fact finder's determination of witnesses' credibility. *Id.* We do so because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and to use these observations in weighing the credibility of the proffered testimony. *Id.* Given the great deference we are required to give to the fact finder's credibility determination, we cannot conclude that appellant's conviction was against the weight of the evidence.

**{¶27}** Dowdle's testimony provided evidence going to all of the elements of assault. She testified that appellant shoved Tommy onto his back twice. She also testified that Tommy's legs were pinned beneath him. She opined that this had to have hurt Tommy. This testimony demonstrates that appellant knowingly caused or attempted to cause physical harm to Tommy. Given that appellant pushed Tommy to the ground and Tommy's legs were pinned beneath him, the court could infer physical harm. "Physical harm" is any injury "*regardless of its gravity or duration.*" R.C. 2901.01(A)(3); emphasis added. Moreover, the fact that appellant twice pushed Tommy onto his back would satisfy the element of attempting to cause physical harm to Tommy even if no actual physical harm occurred. Therefore, the trial court's judgment is not against the manifest weight of the evidence.

**{¶28}** Accordingly, appellant's sole assignment of error is without merit.

{¶29} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.
DeGenaro, J., concurs.