OPINION
{¶ 1} Defendant-appellant Torry Jo Rouse appeals from her conviction in the Belmont County Court Western Division of operating a motor vehicle while intoxicated (OMVI). On appeal, she raises issues of ineffective assistance of counsel, probable cause to arrest, manifest weight of the evidence, and sufficiency of the evidence. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} Appellant was stopped by the Bethesda police at 11:50 p.m. on June 21, 2004 due to a missing exhaust and loud muffler and allegations of speeding and failing to completely stop at a stop sign. She was ticketed for a second violation OMVI in violation of R.C. 4511.19(A)(1)(a), reckless operation in violation of R.C. 4511.20, and improper exhaust in violation of R.C. 4513.22. She filed a motion to suppress in the Belmont County Court Western Division.
 {¶ 3} At the suppression hearing, the state presented the testimony of the arresting officer, who was the long-time Chief of the Bethesda Police Department. He stated that he heard a loud racing engine and exhaust that sounded as though a car was doing "donuts." He then spotted that car rolling through a stop sign. He saw appellant look left, and he believed that she spotted his cruiser. He testified that she "floor-boarded" her car through the intersection at a high rate of speed. He puts his lights on and reached speeds of sixty miles per hour attempting to catch up with her. (Supp.Tr. 6). Appellant then pulled into her driveway, exited her vehicle, and threw the keys on the car's floor. (Supp.Tr. 6-7).
 {¶ 4} The officer testified that appellant could not produce her license, registration, or proof of insurance after fumbling in her purse. (Supp.Tr. 7). He testified to a strong odor of alcohol emanating from her person and her car. (Supp.Tr. 7-8). When he asked if she had been drinking, she told him she was just trying to get home and that he should not make a big deal out of it. (Supp.Tr. 8). The officer also explained that appellant was argumentative throughout the stop. (Supp.Tr. 9).
 {¶ 5} When he asked her to submit to the horizontal gaze nystagmus test, she started to comply and then refused to complete the test on the grounds that she had bad eyes. The officer then asked her to perform the one-leg stand; however, she refused, claiming she had a pin in her hip and was awaiting back surgery. (Supp.Tr. 8). Then, he asked her to perform the walk-and-turn or heel-toe test. She started performing the test, getting close to the nine steps required before the turn. However, she stopped to pick up her dog. (Supp.Tr. 8-9). When the officer advised her to put the dog down, she then picked up her young child who came out of the house.
 {¶ 6} The officer testified that although she did not complete any tests, her balance was noticeably impaired. Thus, he arrested her for OMVI. She then refused to undergo a breath test. (Supp.Tr. 9).
 {¶ 7} Appellant testified that she came to a complete stop and pulled out after looking left and seeing no traffic. (Supp.Tr. 24). She then described the winding road that leads to her house. (Supp.Tr. 25). She contended that it was impossible to drive sixty miles per hour on this road. (Supp.Tr. 32). She testified that she had not been drinking that night. (Supp.Tr. 27). She then explained why she could not take any of the three field sobriety tests. (Supp.Tr. 28-29). She claimed that she has trouble standing and that she does not completely have balance. (Supp.Tr. 30).
 {¶ 8} The court overruled the suppression motion, specifically finding the officer's testimony credible concerning the indicia of intoxication exhibited by appellant at the time of the stop. The case was then tried to the court on September 21, 2004. The trial court found her not guilty of reckless operation but guilty of OMVI and improper exhaust. In a September 22, 2004 entry, the court sentenced her on the OMVI to ninety days in jail with sixty days suspended, various probationary conditions for two years, a $1,000 fine plus costs, and a two-year license suspension. For improper exhaust, she was fined $100. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 9} Appellant sets forth three assignments of error, the first of which alleges:
 {¶ 10} "DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 11} Appellant sets forth three allegations of ineffective assistance of trial counsel. First, she complains that she gave her attorney copies of her medical records, but her attorney failed to introduce these records to explain why she was unable to take certain field sobriety tests. The state counters by arguing that even if counsel should have introduced medical records, they were only alleged to be relevant to one of the three offered field sobriety tests, the one-leg stand. However, at least from the testimony presented at trial, it appears her medical condition was also relevant to the walk-and-turn test and the reasons why she appeared to be failing the test prior to its completion. The state then points out that her explanation for refusing to take the horizontal gaze nystagmus test was that she had bad eyes and needed glasses. The state notes that this excuse has no effect on the test.
 {¶ 12} In order to prevail on a claim of ineffective assistance of counsel, the defendant has the burden to establish two things: (1) that counsel's performance was deficient, and (2) that counsel's deficiency prejudiced the defense. State v. Reynolds (1998), 80 Ohio St.3d 670, 674, citing Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonableness. Id. The defendant must produce evidence that counsel acted unreasonably by substantially violating essential duties owed to the client. State v. Sallie (1998), 81 Ohio St.3d 673, 674. Because attorneys are presumed competent, reviewing courts must refrain from second-guessing strategical, tactical decisions and strongly assume that counsel's performance falls within a wide range of reasonable legal assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558. See, also,State v. Burley (Aug. 11, 1998), 7th Dist. No. 93CA204 (a defendant is not guaranteed the right to the best or most brilliant counsel).
 {¶ 13} Upon demonstrating counsel's deficient performance, the defendant then has the burden to establish prejudice to the defense as a result of counsel's deficiency. Reynolds, 80 Ohio St.3d at 674. The reviewing court looks at the totality of the evidence and decides if there exists a reasonable probability that, were it not for serious errors made, the outcome of the trial would have been different.Strickland, 466 U.S. at 695-696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 14} Appellant testified that she had a medical condition that prevented her from performing certain field sobriety tests. At trial, she stated that she had a rod and pins in her femur and that she had a bad disk which required back surgery. The state stipulated to these medicalconditions. (Tr. 62). Thus, deficient performance is not apparent in the failure to introduce medical records to establish these conditions at trial.
 {¶ 15} Likewise, appellant does not craft her appellate argument in a manner that allows us to determine exactly how she was prejudiced since the court heard her testimony and the state's stipulation regarding her condition. In other words, she does not explain what more the medical records would add with regards to each field sobriety test. In fact, field sobriety tests are not even a necessary factor in order to arrest or convict for OMVI. Otherwise, those with certain medical conditions would have a free pass to drive drunk. This issue will be discussed further supra.
 {¶ 16} Additionally, the actual existence of relevant medical records, the contents of these medical records, the effect of these records regarding each refused or attempted field sobriety test, and her attorneys' knowledge of these records are not matters in the record before this court. Thus, we cannot consider the issue on direct appeal since we are not permitted to add matter to the record which was not part of the trial court proceedings. See, e.g., State v. Hill (2001),90 Ohio St.3d 571, 573, citing State v. Ishmail (1978), 54 Ohio St.2d 402. Where the evidence supporting a claim of ineffective assistance of appellate counsel is de hors the record, the subject is not available for analysis in the direct appeal. See, e.g., State v. Hartman (2001),93 Ohio St.3d 274, 299; State v. Madrigal (2000), 87 Ohio St.3d 378,390-391; State v. Carter (2000), 89 Ohio St.3d 593, 606.
 {¶ 17} Appellant next states that her attorney refused to introduce a videotape she made showing the street where the officers' observations of her driving took place. For instance, at trial, the driving police officer testified that appellant "floor-boarded" her vehicle, and the other officer claimed appellant was probably driving in excess of fifty miles per hour. (Tr. 7, 18). At the suppression hearing, the driving officer testified that he had to go sixty miles per hour in order to keep up with appellant. Appellant states that her recording would have established that the road is too winding for the officer's testimony to be valid.
 {¶ 18} Once again, the contents, quality, and existence of this tape, her attorney's knowledge of it and his refusal to use it are matters outside the trial record and cannot be evaluated by this court in the direct appeal. See id. See, also, State v. Moore, 7th Dist. No. 03BE22, 2003-Ohio-4888, ¶ 25; State v. Kowalsky, 7th Dist. No. 856, 2003-Ohio-3042, ¶ 11; State v. Alicea, 7th Dist. No. 99CA36, 2002-Ohio-6907, ¶ 35. Thus, her argument is overruled.
 {¶ 19} We note, however, that the attorney may have been hesitant to show any such videotape since high speeds on a winding road are even more dangerous than on a straight road. And, thus, the attorney may have tactically determined that the tape would do more harm that good. Additionally, appellant testified to the characteristics of the road and to her claim that high speeds were impossible. (Tr. 59).
 {¶ 20} Lastly, appellant alleges that she never waived her right to a jury trial or instructed her attorney to waive her right. She states that she wanted a jury to try her case rather than the court.
 {¶ 21} In petty offense cases, where there is a right to a jury trial, the defendant shall be tried to the court unless he demands a jury trial in writing within a specified time period. Crim.R. 23(A). See, also, R.C. 1907.29(A) and (B). A petty offense means a misdemeanor other than a serious offense. Crim.R. 2(D). A serious offense is a felony or a misdemeanor for which the penalty prescribed by law includes confinement for more than six months. Crim.R. 2(C).
 {¶ 22} A first degree misdemeanor typically carries a sentence of no more than one hundred eighty days. R.C. 2929.24(A)(1). However, a longer term can be imposed if provided for in a more specific section of the Revised Code. R.C. 2929.24(A). Here, a conviction for OMVI, including a second offense within six years as appellant was charged, carries a maximum sentence of only six months. R.C. 4511.19(G)(1)(b). The reckless operation and improper exhaust charges were even lesser offenses. See R.C. 4511.20(B); R.C. 4513.22(B) and R.C. 4513.99(A) and (B). Thus, appellant was charged with petty offenses.
 {¶ 23} As such, appellant was required to file a timely jury demand to activate her right to a trial by jury. However, appellant never filed a written jury demand; nor did she make any oral demands for that matter. Whether she voiced her desire for a jury trial to her attorney or whether he improperly conducted his advisement of appellant regarding this matter is not on the record before this court. Thus, as previously set forth, we cannot address the effectiveness of counsel on this issue. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 24} Appellant's second assignment of error contends:
 {¶ 25} "TRIAL COURT ERRED BY FAILING TO SUPPRESS EVIDENCE FROM THE STOP."
 {¶ 26} First, we note that the text of this assignment of error states that we should suppress evidence "from the stop." This implies that she is contesting the reasonable suspicion required to stop her vehicle. However, her argument only involves suggestions as to how we should interpret the facts occurring after the stop. For instance, she urges that she did not fail the field sobriety tests, she was merely unable to perform them. Also, she notes that her passenger drank a six-pack of beer that night, which could account for the odor of alcohol. These arguments do not contest the validity of the stop. Rather, the arguments actually contest that the police officer's testimony established probable cause for her OMVI arrest.
 {¶ 27} This conclusion that she is not arguing the validity of the stop is bolstered by the fact that regardless of any reckless operation disputes, the police were permitted to stop her for her loud exhaust. (In fact, she later admitted that her exhaust was missing and that her muffler was loud.) Due to the loud exhaust, the stop was supported by reasonable suspicion that a traffic violation was being committed. SeeDayton v. Erickson (1996), 75 Ohio St.3d 3, 7 (traffic stop valid if based on observation of traffic violation regardless of any pretext or ulterior motive); State v. Andrews (1991), 57 Ohio St.3d 86, 87
(reasonable suspicion merely requires the officer be able to point to reasonable and articulable facts which, taken together with rational inferences, reasonably warrant a stop). Moreover, the trial court was permitted to believe the police officer's testimony at the suppression hearing that appellant made only a "rolling stop" at a stop sign and then "floor-boarded" her vehicle at high rates of speed in an apparent attempt to get home before the cruiser noticed where she turned.
 {¶ 28} Thus, we move on to the question of whether there existed probable cause to arrest appellant for OMVI. Appellant first points to testimony from the trial that her passenger drank a six-pack of beer that night which would explain the odor of alcohol noticed by the officer. However, this assignment of error expressly deals with suppression, and the testimony regarding the passenger drinking a six-pack of beer that day was presented at trial, not at the suppression hearing. (Tr. 45). When asked if the passenger had been drinking, appellant testified at the suppression hearing only: "She may have been. I'm not positive." (Supp.Tr. 27).
 {¶ 29} Appellant next points out that she did not fail the field sobriety tests. She states she was unable to perform the tests due to legitimate reasons. As the state counters, she gave no excuse to the officer regarding the walk-and-turn. Instead, she interrupted that test just before the halfway point and then found new interruptions after that. Regardless, field sobriety tests are not necessary in order to find probable cause for an OMVI arrest. See State v. Homan (2000),89 Ohio St.3d 421, 427; State v. Moore, 7th Dist. No. 02CA195,2004-Ohio-3203.
 {¶ 30} In fact, the Supreme Court has held that even if the results of improperly conducted field sobriety tests are not admissible, the nonscientific observations of the defendant's performance on these tests can be related by the police officer at the suppression hearing and at trial in order to establish various indicia of intoxication. State v.Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 11-15.
 {¶ 31} "The nonscientific field sobriety tests involve simple exercises, such as walking heel-to-toe in a straight line (walk-and-turn test). The manner in which a defendant performs these tests may easily reveal to the average layperson whether the individual is intoxicated." Id. at ¶ 14.
 {¶ 32} Thus, we glean two relevant premises. One, field sobriety tests were not required to establish probable cause in this case. Two, the officer testified to appellant's lack of balance and staggering during part of the walk-and-turn test performed prior to interruption. Although she claimed at trial (not at the suppression hearing or to the officer) that she could not perform the walk-and turn due to medical conditions, the officer's testimony at the suppression hearing regarding her partial performance could rationally be construed as describing an intoxicated individual rather than one with a prohibitive medical condition.
 {¶ 33} When we review a trial court's suppression decision, our review is limited. We do not second-guess factual determinations. The trial court assumes the role of the fact-finder at the suppression hearing. Thus, the trial court occupies the best position from which to view the witnesses as they testify. From this view, the court can best observe demeanor, voice inflection, and gestures in order to evaluate credibility. Consequently, we generally accept those facts as true and determine as a matter of law whether the trial court applied the proper legal standards. See, e.g., State v. Lloyd (1998), 126 Ohio App.3d 95,100-101 (7th Dist.).
 {¶ 34} The legal standard for determining probable cause to arrest for OMVI is whether at the moment of the arrest, the officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Homan, 89 Ohio St.3d at 427. The arrest must therefore be supported by the officer's observations of indicia of alcohol consumption. Lloyd, 126 Ohio App.3d at 104. In reviewing an arrest for probable cause, the trial court must examine the totality of the facts and circumstances.
 {¶ 35} As aforementioned, failed field sobriety tests results are not required as indicia for alcohol consumption. Homan, 89 Ohio St.3d at 427. Moreover, it has been held that the officer need not have witnessed erratic driving in order to arrest for OMVI. See City of Oregon v.Szakovits (1972), 32 Ohio St.2d 271, 274. If erratic driving were required to arrest for OMVI, then those who are lawfully pulled over for violations such as loud exhaust could not be arrested for OMVI, even if they are falling down drunk, as long as they drove fine before the police stopped them. See State v. Maston, 7th Dist. No. 02CA101, 2003-Ohio-3075, ¶ 21-22 (making these same observations on the lack of erratic driving and a refused field sobriety test).
 {¶ 36} The court must view the totality of the facts and circumstances along with the reasonable inferences that can be drawn. The officer heard a loud exhaust and a racing engine, sounding as if someone was spinning "donuts" with their vehicle. The officer testified that appellant rolled through a stop sign, floored her accelerator, and drove at an excessive rate of speed. The officer opined that appellant was trying to elude him, hoping to get home before he caught up with her. The officer testified that he immediately turned his overhead lights on, but appellant testified that she did not notice the cruiser until she exited her vehicle.
 {¶ 37} The officer described appellant as confused, fumbling, and unable to produce her driver's license, registration, or proof of insurance. He took this as evidencing an intoxicated inability to comprehend three requests at one time and process them successfully. Appellant was very argumentative and interruptive.
 {¶ 38} The officer claimed that both her individual person and her car smelled strongly and overwhelmingly of alcohol, specifically beer. He interpreted her statement that she was trying to get home and that he should not make a big deal out of it as a type of admission since it was in response to his question about drinking.
 {¶ 39} During the uncompleted walk-and-turn test, appellant's balance seemed impaired to the point of intoxication since she could not walk a straight line and she staggered two to three feet to the left. After allowing her dog and her child to interrupt this test, she stated that she was in her driveway, she did not have the keys to the ignition, and the police should leave. Under the totality of the facts and circumstances, there are sufficient indicia of intoxication to cause a prudent person to believe appellant was under the influence of alcohol in order to establish probable cause to arrest for OMVI. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 40} Appellant's third assignment of error provides:
 {¶ 41} "TRIAL COURT FOUND THE DEFENDANT GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 42} In the text of this assignment, appellant contends that the decision to find her guilty is against the manifest weight of the evidence. Yet, in the argument section, she contends that evidence did not establish her guilt of the OMVI charge beyond a reasonable doubt. As we have stated numerous times, sufficiency and weight are distinct concepts that must be addressed separately. See State v. Thompkins
(1997), 78 Ohio St.3d 380, 387.
 {¶ 43} Sufficiency of the state's evidence is a legal question involving an inquiry into whether the evidence was adequate to even submit the case to the jury. Id. at 386. In determining sufficiency, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact-finder could find the essential elements proven beyond a reasonable doubt. Id. See, also, State v. Goff
(1998), 82 Ohio St.3d 123, 128.
 {¶ 44} The elements here are operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of both. R.C.4511.19(A)(1)(a). The disputed element here is under the influence of alcohol; the operating element is not at issue.
 {¶ 45} At the trial, the arresting officer reiterated much of the testimony he produced at the suppression hearing with some additions such as glassy eyes and slurred speech. Rather than restating this testimony, we point to our recitation of his story under the second assignment of error. Additionally, the assisting officer testified at trial as to his observations, opined that appellant appeared to be under the influence of alcohol, and confirmed various indicia of intoxication mentioned by the arresting officer. For instance, he too noted the rolling stop, the excessive rate of speed, and the alleged general state of reckless driving. He described her speed and actions as sluggish, adding that although the slurring was minimal, he did have a hard time understanding her a couple times. This officer also pointed out that appellant seemed to have an attention span problem.
 {¶ 46} Viewing all of the evidence in the light most favorable to the state, a rational person could find beyond a reasonable doubt that appellant was operating a motor vehicle while intoxicated. There was sufficient evidence of appellant's guilt. We now move to weight of the evidence.
 {¶ 47} It is the job of the fact-finder to weigh the evidence and determine whether the greater amount of credible evidence sustains the issue to be established. Thompkins, 78 Ohio St.3d at 387. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Id. "Weight is not a question of mathematics, but depends on its effect in inducing belief." Id.
 {¶ 48} In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387. The appellate court's discretionary power to grant a new trial on these grounds can only be exercised in the exceptional case where the evidence weighs heavily against the conviction. Thompkins,78 Ohio St.3d at 387.
 {¶ 49} This strict test acknowledges that credibility is generally the province of the trier of fact who sits in the best position to assess the weight of the evidence and credibility of the witnesses whose gestures, voice inflections, and demeanor are personally observed. State v. Hill
(1996), 75 Ohio St.3d 195, 205; State v. DeHass (1967), 10 Ohio St.2d 230,231. See, also, Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. Where there are two fairly reasonable views or explanations, we do not choose which one we prefer. State v. Black, 7th Dist. No. 03JE1, 2004-Ohio-1537, ¶ 18. Rather, we defer to the trier of fact unless the evidence weighs so heavily against conviction that we are compelled to intervene. Id.
 {¶ 50} Appellant notes that the officer testified that she was driving recklessly, but the trial court found her not guilty of reckless operation. She points out that two of her friends testified that she did not drink at all that day. She also urges that any smell of alcohol was likely coming from her passenger who testified that she drank a six-pack of beer.
 {¶ 51} First, we note that it is not inconsistent for the court to find that the officers did not sufficiently testify to the elements of reckless operation but at the same time believe the indicia of intoxication presented by these officers. Reckless operation entails driving a vehicle on a street in willful or wanton disregard of the safety of persons or property. R.C. 4511.20(A). One can speed and/or make a rolling stop at a stop sign without being guilty of reckless operation. Moreover, there were non-driving related indicia that could convince the court that appellant was intoxicated. The evidence does not weigh heavily against appellant's OMVI conviction. Thus, we refuse to find the miscarriage of justice required in order to reverse on manifest weight of the evidence grounds. Accordingly, this assignment of error is overruled.
 {¶ 52} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.