[Cite as *State v. Tillis*, 2017-Ohio-9010.]

STATE OF OHIO MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 16 MA 0130 |
| V. | ) | |
| | ) | OPINION |
| TERRENCE TILLIS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 14 CR 1132

JUDGMENT:      Affirmed

APPEARANCES:
For Plaintiff-Appellee      Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant      Attorney Donna Jewell McCollum
3685 Stutz Drive, Suite 100
Canfield, Ohio 44406

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: December 8, 2017

DONOFRIO, J.

{¶1} Defendant-appellant, Terrence Tillis, appeals from a Mahoning Country Common Pleas Court judgment convicting him of burglary, following a jury trial.

{¶2} On October 21, 2014, Crystal Jefferson left her house in Youngstown at approximately 10:30 a.m. to give a friend a ride. Upon her return home, around 11:00 a.m., Jefferson went back to sleep. According to Jefferson, she was asleep for ten to fifteen minutes when she "felt something" in the bedroom with her. Jefferson awoke to see appellant standing in her bedroom doorway. Jefferson recognized appellant because she has known him for years and appellant resided next door with his girlfriend. Upon seeing appellant in her bedroom, Jefferson began yelling and cursing at him to leave. It was at this point that Jefferson saw appellant grab her Michael Kors purse and flee from her residence.

{¶3} Jefferson got dressed and went next door where appellant was staying and banged on the door. Appellant did not open the door or acknowledge Jefferson. One of the neighbors heard the commotion and approached Jefferson. The neighbor permitted Jefferson to use his phone to call the police. Youngstown Police Officer Richard Baldwin and Detective-Sergeant Chad Zubal responded. Officer Baldwin took a report on what had transpired. When Detective Zubal heard Jefferson explain the situation, and realized the suspect lived next door, Detective Zubal and a few other officers approached the house where appellant resided. Appellant answered the door for the officers and invited them into the foyer. While inside, the officers did not conduct a search because Detective Zubal believed they did not have enough evidence to search the residence. Despite the officers not conducting a search of the residence, they did conduct a protective sweep to ensure no one else was inside the house. The officers did not see Jefferson's purse during the protective sweep. The officers subsequently arrested appellant.

{¶4} Jefferson's purse was not located until Brenda Reed (appellant's girlfriend) went to Jefferson's house and returned the purse to Jefferson. Jefferson's friend, Laponica Lampley, witnessed Reed give the purse to Jefferson.

{¶5} A Mahoning County Grand Jury indicted appellant on one count of

burglary, a second-degree felony in violation of R.C. 2911.12(A)(1)(D).  The matter proceeded to a jury trial.  The jury found appellant guilty as charged.  The trial court subsequently sentenced appellant to six years' incarceration.

{¶6}   This court granted appellant leave to file a delayed appeal on October 25, 2016.  He now raises one assignment of error.

{¶7}   Appellant's sole assignment of error states:

THE COURT DENIED APPELLANT DUE PROCESS UNDER THE FOURTEENTH AMENDMENT DUE TO THE FACT THAT HIS CONVICTION FOR BURGLARY WAS AGAINST THE MANIFEST WRIGHT [SIC] OF THE EVIDENCE AND THE JURY'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL.

{¶8}   In his assignment of error, appellant asserts both that there was insufficient evidence to support his conviction and that his conviction was against the manifest weight of the evidence.  We will address his arguments separately.

{¶9}   Appellant argues there was insufficient evidence to support his conviction.  He contends that the officers arrested him solely on Jefferson's eyewitness testimony.  He notes that the police did not collect DNA or fingerprint evidence and no one else testified as to seeing him in Jefferson's home or having possession of the purse.  Appellant argues that Jefferson's testimony is insufficient evidence for a reasonable trier of fact to find the essential elements of burglary.

{¶10} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict.  *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *Id.*  In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶11} The jury convicted appellant of burglary in violation of R.C. 2911.12(A)(1), which provides: "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense[.]"

{¶12} We must examine the evidence to determine if it was sufficient to convict appellant of burglary. Plaintiff-appellee, the State of Ohio, presented five witnesses.

{¶13} Jefferson was the first witness. Jefferson testified that on the morning in question she left her house at approximately 10:30 a.m. to drop a friend off. (Tr. 108-109). She then returned home and got back into bed at approximately 11:00 a.m. (Tr. 109). Jefferson estimated that she was asleep for ten to 15 minutes when she "felt something" in the room with her. (Tr. 109-110). She stated that she woke up to find appellant was in the room with her. (Tr. 110). Jefferson testified that she has known appellant for years. (Tr. 110). At that time, appellant was living next door to Jefferson with his girlfriend, Brenda Reed. (Tr. 111).

{¶14} Jefferson testified that she began "cussing" at appellant and asking him why he was in her house. (Tr. 113). She stated that appellant then grabbed her purse and ran out of her front door. (Tr. 113). Jefferson stated that she chased after appellant but was unable to catch him. (Tr. 116). She then went back inside her house to put some clothes on. (Tr. 116-117). Jefferson then went next door to Reed's house and banged on the door. (Tr. 117). No one answered. (Tr. 118). Another neighbor saw the commotion, came over, and offered Jefferson his cell phone to call the police. (Tr. 118). Jefferson called 911 and the police responded. (Tr. 118). She told the police what happened. (Tr. 118-119). Jefferson stated that the police eventually brought appellant out of his girlfriend's house. (Tr. 126). And

when Jefferson went back inside of her house, she noticed that the lock on her bedroom window had been broken. (Tr. 120). She testified that it was not broken earlier that day. (Tr. 120).

{¶15} Several days later, Jefferson testified, appellant's girlfriend came to her house and returned the purse that appellant had stolen. (Tr. 127-128). She then took the purse to the Youngstown Police Department. (Tr. 132).

{¶16} On cross examination, Jefferson stated that while appellant was leaving her house, she was "pulling" on him. (Tr. 138).

{¶17} Youngstown Police Officer Richard Baldwin was the second witness. Officer Baldwin testified that he responded to a call at approximately 11:00 a.m. regarding a burglary. (Tr. 145). When he arrived on the scene, Jefferson explained to him that: appellant broke into her house through her bedroom window; he grabbed her purse; he started running; she grabbed him but he broke loose; and he ran out of the front door. (Tr. 145-146). While Officer Baldwin was taking Jefferson's report, he saw other officers step out onto Reed's porch with appellant. (Tr. 148-149). Jefferson yelled out that appellant was the man who broke into her house. (Tr. 150). Officer Baldwin stated that he did not see the purse during this time. (Tr. 151).

{¶18} The third witness was Detective-Sergeant Chad Zubal. Detective Zubal also responded the burglary call at approximately 11:00 a.m. (Tr. 161). Upon learning that appellant lived next door to Jefferson, Detective Zubal, along with other officers, knocked on Reed's door. (Tr. 162). Appellant answered. (Tr. 162). Detective Zubal testified that he explained to appellant why they were there. (Tr. 163). He did not conduct a search of the house because the detective did not think they had enough reason to search the entire house. (Tr. 163). The police only conducted a protective sweep. (Tr. 163). Detective Zubal did not notice the purse during the protective sweep. (Tr. 163-164).

{¶19} Lieutenant Ramon Cox was the fourth witness. He testified that he met with Jefferson to file the charge against appellant. (Tr. 175-176). A few days later, Lt. Cox stated, Jefferson returned with the stolen purse and gave it to him. (Tr. 176).

**{¶20}** Laponica Lampley was the final witness. Lampley is Jefferson's friend. She testified she was at Jefferson's house in the days following the burglary when Reed came to the house. (Tr. 186-187). She saw Reed return Jefferson's stolen purse to her. (Tr. 187-189).

**{¶21}** This evidence was sufficient to support appellant's burglary conviction. The broken lock on Jefferson's bedroom window indicates a forced entry. Jefferson testified that the bedroom window lock was intact when she left her residence that morning, but after appellant fled her residence she noticed that the lock was broken. Additionally, Jefferson knew appellant and identified him as the man she found in her bedroom who fled from her house with her purse. This evidence, construed in the light most favorable to the prosecution, establishes each element of burglary. Thus, appellant's conviction is supported by sufficient evidence.

**{¶22}** Appellant also argues his conviction is against the manifest weight of the evidence. Appellant contends the discrepancies in Jefferson's testimony make it unreliable. Appellant argues that Jefferson changed her account of what happened by originally testifying that she was unable to catch appellant while he was fleeing and then testifying that she caught him and pulled on him as he fled her residence. In addition, appellants points out, the timeline given by Jefferson and the timeline given by the police do not correspond. Jefferson testified that she left her residence around 10:30 a.m. and returned around 11:00 a.m. Jefferson further testified that she was asleep for ten to fifteen minutes before she "felt something" in the room with her. Jefferson being asleep for ten to fifteen minutes prior to seeing appellant places the time of the encounter around 11:15 a.m. This does not take into account the time it took Jefferson to chase appellant out of her residence, get dressed, go next door and pound on the door, the neighbor coming over to see what is wrong, and the neighbor allowing Jefferson to call the police using his phone. Despite all of these things, Officer Baldwin testified that he arrived on scene at 11:00 a.m. Appellant argues that the timeline discrepancy in Jefferson's testimony destroys her credibility as a witness.

**{¶23}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶24}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

**{¶25}** In order to reverse a jury verdict as against the manifest weight of the evidence, all three appellate judges must concur. *Thompkins*, 778 Ohio St.3d at 389.

**{¶26}** Appellant urges that the inconsistencies in Jefferson's testimony render her unreliable. But the inconsistencies are minimal. Jefferson's recollection of the time may have been off by fifteen minutes or so compared to the officers' account of when they responded to the scene. Additionally, Jefferson may have grabbed appellant as he fled from her house or she may not have grabbed him. Neither of

these inconsistencies go to the ultimate issue in this case, however. The inconsistencies relate to Jefferson's credibility. And her credibility was a matter for the jury to weigh.

**{¶27}** The jury is in the best position to judge witnesses' credibility and conflicting testimony. *Rouse*, 2005-Ohio-6328, at ¶ 49, citing *Hill*, 75 Ohio St.3d at 205. That is because the jurors can observe witnesses' gestures, voice inflections, and demeanor. *Id.* We will not second-guess the jury's determinations of credibility.

**{¶28}** Based on the above, we cannot conclude that the jury lost its way in finding appellant guilty of burglary. Appellant's conviction is not against the manifest weight of the evidence.

**{¶29}** Accordingly, appellant's sole assignment of error is without merit and is overruled.

**{¶30}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.