[Cite as *State v. Cabrera*, 2014-Ohio-3372.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 13CA010434 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JERRY CABRERA | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 12CR085829 |

DECISION AND JOURNAL ENTRY

Dated: August 4, 2014

WHITMORE, Judge.

{¶1} Defendant, Jerry Cabrera, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2} While on patrol, Officer Kyle Gelenius, of the Lorain Police Department, performed a random check on the license plate of a Toyota Celica. Upon discovering that the plates had expired in April 2008 and were registered to a Buick, Officer Gelenius initiated a traffic stop.

{¶3} Officer Gelenius approached the driver, later identified as Cabrera, and requested his driver's license and proof of insurance. Cabrera admitted that his license was suspended, and Officer Gelenius requested he exit the car. Officer Gelenius immediately handcuffed Cabrera, with his hands behind his back, and walked him back to the police cruiser. According to Officer Gelenius, he then performed a field sobriety test, which Cabrera passed, and placed him in the

back, passenger side of the cruiser. Officer Gelenius then conducted an inventory of Cabrera's car so that it could be towed.

{¶4} After transporting Cabrera to jail, Officer Gelenius searched the back seat of his cruiser and discovered five white pills underneath the seat cushion near where Cabrera had been sitting. A laboratory test revealed that the pills contained hydrocodone, a controlled substance. Cabrera was indicted on: (1) tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; (2) possession of a controlled substance, in violation of R.C. 2925.11(A), a felony of the fifth degree; and (3) driving under suspension, in violation of R.C. 4510.11(A), a misdemeanor of the first degree. After a bench trial, Cabrera was convicted of all charges. He now appeals and raises one assignment of error for our review.

II

Assignment of Error

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

{¶5} In his sole assignment of error, Cabrera argues that his convictions for possession of drugs and tampering with evidence are against the weight of the evidence. Specifically, Cabrera argues that the evidence does not support a finding that he placed the pills in the back of the police cruiser.

{¶6} While Cabrera does not argue sufficiency, "a review of the weight of the evidence necessarily involves an evaluation of the sufficiency of the evidence in that, in order for this Court to weigh the evidence, there must be evidence to weigh." *State v. Tulk*, 9th Dist. Lorain No. 12CA010310, 2013-Ohio-4279, ¶ 3, quoting *State v. Frum*, 9th Dist. Wayne No. 12CA0039, 2013-Ohio-1096, ¶ 4.

**{¶7}** "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶8}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

**Possession of Drugs**

**{¶9}** Cabrera was indicted on possession of drugs in violation of R.C. 2925.11(A). R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." For an indictment on possession of drugs to be constitutionally sufficient, it must include either the specific name of the drug alleged to have been possessed or the schedule in which the drug appears. *See State v. Jackson*, 134 Ohio St.3d 184, 2012-Ohio-5561, ¶ 19-21. The name of the drug or the schedule is an essential element of the offense. *See State v. Headley*, 6 Ohio St.3d 475, 479 (1983) ("the type of controlled substance involved constitutes an essential element of the crime which must be included in the indictment"). *See also Jackson* at ¶ 21 ("[T]he General Assembly intended the schedule of drugs set forth in R.C. 3719.41, not the specific drug itself, to be an essential element of trafficking.").

To support a criminal conviction, the State must prove all essential elements of an offense beyond a reasonable doubt. R.C. 2901.05(A).

{¶10} Cabrera's indictment specifically stated that the drug involved was a schedule III, IV, or V drug. The State further alleged that Cabrera had a prior drug conviction, which elevated his possession charge to a felony of the fifth degree.

{¶11} The pills found in the back of Officer Gelenius' cruiser were submitted to the county's crime laboratory for analysis. At trial, defense counsel stipulated to the authenticity and admissibility of the laboratory report, which identified the pills as hydrocodone, a schedule II drug. *See* R.C. 3719.41. The laboratory report was the only evidence of a controlled substance presented at trial. The State presented no evidence that Cabrera possessed a schedule III, IV, or V drug. Because Cabrera was indicted for possession of a schedule III, IV, or V drug, his conviction for possession is not supported by sufficient evidence and must be reversed.

**Tampering with Evidence**

{¶12} R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" "A conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *State v. Straley*, Slip Opinion No. 2014-Ohio-2139, syllabus. Cabrera argues that his conviction for tampering is against the manifest weight of the evidence because the evidence does not support a finding that he stuffed the pills into the back seat of the police cruiser.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins*, 78 Ohio St.3d at 387, quoting *Black's* at 1594. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶13} Officer Gelenius testified that he initiated a traffic stop of a Toyota Celica because a random check on the license plate showed that the plates had expired in April 2008 and were registered to a Buick. The traffic stop was recorded on Officer Gelenius' dash-camera and a copy of the recording was admitted into evidence at trial. Officer Gelenius testified that he approached the driver, later identified as Cabrera, and requested his driver's license and insurance information. Cabrera admitted that he did not have a valid driver's license, and Officer Gelenius requested that he exit the car. Officer Gelenius then handcuffed Cabrera, with his hands behind his back, and walked him back to the side of the police cruiser. According to Officer Gelenius, he then conducted a field sobriety test, which Cabrera passed, patted Cabrera down for weapons, and placed Cabrera in the back, passenger side of the cruiser. These actions took place out of the view of the camera. Officer Gelenius then returned to Cabrera's car to

conduct an inventory, pursuant to department policy, so that it could be towed. According to the dash-cam video, Officer Gelenius spent approximately three minutes and thirty seconds inventorying Cabrera's car. During this time, the video does not show Cabrera, who was handcuffed in the back seat of the cruiser.

{¶14} Once the inventory of the car was complete, Officer Gelenius returned to his cruiser to complete some paperwork. He then turned the camera to record Cabrera sitting in the back seat. The recording continues to show Cabrera until he exits the cruiser at the jail. The recording shows Cabrera making only a few, minor movements. Officer Gelenius testified that, immediately after he returned to his cruiser, he searched the back seat for any contraband, pursuant to "proper protocol," and discovered five white pills underneath the seat where Cabrera was sitting.

{¶15} Officer Gelenius testified that he has exclusive use of his assigned police cruiser. He explained that his cruiser is a "take-home unit" and that he is "meticulous" about keeping the back seat clean. Officer Gelenius stated that he was certain that he searched the back seat at the start of his shift, including lifting the back seat and looking underneath. Officer Gelenius testified that Cabrera was the first person he placed in the back of his cruiser on that shift.

{¶16} Cabrera argues that the weight of the evidence does not support a conclusion that he put the pills underneath the seat. Cabrera asserts that he was handcuffed, with his hands behind his back, and was searched prior to being placed in the cruiser. However, Officer Gelenius testified that, in his pat down of Cabrera, he was searching for weapons, not pills. Officer Gelenius also testified that he did not know what Cabrera was doing while he was inventorying Cabrera's car. Further, Officer Gelenius stated that he had searched underneath the back seat at the start of his shift, the pills were found immediately after transporting Cabrera to

jail, and Cabrera was the only person that had been in the back of the cruiser during the time in between the two searches.

{¶17}   While Cabrera was initially arrested for driving under suspension, he knew that he was going to jail when he was handcuffed and placed in the back seat of Officer Gelenius' cruiser.  Any illegal drugs possessed by Cabrera at the time he was admitted into the jail would likely have been discovered and investigated.   Therefore, at the point that Cabrera was handcuffed and placed in the back of the police cruiser, the hydrocodone pills on his person were evidence of a "likely official investigation" and his actions of hiding them underneath the back seat was "intended to impair the value or availability of evidence related" to that likely investigation. *See Straley*, Slip Opinion No. 2014-Ohio-2139, at syllabus.

{¶18} After reviewing the entire record, weighing the evidence and all reasonable inferences, we cannot conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that Cabrera's conviction for tampering must be reversed and a new trial ordered.  *See Otten*, 33 Ohio App.3d at 340.  Accordingly, Cabrera's assignment of error, as it relates to his conviction for tampering with evidence, is overruled.

III

{¶19} Cabrera's sole assignment of error is sustained in part and overruled in part.  The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for the trial court to vacate Cabrera's conviction for possession of a schedule III, IV, or V drug.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

KENNETH N. ORTNER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.