[Cite as *State v. Simpson*, 2020-Ohio-3161.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DARREN SIMPSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MA 0131**

---

**Criminal** Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 17CR1142

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Paul Gains*, Prosecutor, *Atty. Ralph Rivera,* Assistant Prosecutor, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Andrew Zellers*, Richard G. Zellers & Associates, 3695 Boardman-Canfield Road, Building B, Suite 300, Canfield, Ohio 44406, for Defendant-Appellant.

May 29, 2020

_____

**Donofrio, J.**

{¶1} Defendant-appellant, Darren Simpson, appeals from a Mahoning County Common Pleas Court judgment convicting him of tampering with evidence, possession of heroin, and aggravated possession of Fentanyl following a jury trial.

{¶2} On September 27, 2017, appellant was driving through Austintown Township with his eight-year-old son in the car. Austintown Police Officer David Kriebel noticed appellant did not stop at a stop sign, so he executed a traffic stop of appellant's vehicle. Appellant was not able to provide Officer Kriebel with a driver's license, registration, or proof of insurance. Consequently, Officer Kriebel ran a status check with appellant's social security number. The officer learned that appellant had a suspended driver's license and an active warrant for a seatbelt violation from Youngstown Municipal Court.

{¶3} Officer Kriebel called for backup. He had appellant step out of his vehicle. The officer conducted a pat-down search for weapons on appellant's person. He did not find any weapons. With appellant's permission, the officer also searched appellant's car and found nothing. Officer Kriebel allowed appellant to call his son's mother to come and pick up their son. After she picked up their son and appellant's car, Officer Kriebel placed appellant under arrest. He contacted the Youngstown Police Department because appellant's warrant was from Youngstown. Officer Kriebel made arrangements to transport appellant to a meeting place in Youngstown so that he could hand appellant over to the Youngstown officers.

{¶4} Officer Kriebel handcuffed appellant's hands in front of him and placed him in the backseat of his cruiser. During the short drive to meet the Youngstown officers, Officer Kriebel noticed appellant bending over and moving his head down towards his legs several times. Appellant told the officer he was wiping sweat from his brow. Officer Kriebel instructed appellant to stop.

{¶5} When they arrived at the meeting place, Officer Kriebel got appellant out of the back of his cruiser and turned him over to the Youngstown Police Officers who

were waiting for them.  Once appellant was out of the car, Officer Kriebel looked into his back seat and noticed a baggie on the floor where appellant's feet had been.  The baggie appeared to have drugs in it.  Appellant denied that it belonged to him.  But because Officer Kriebel had thoroughly cleaned and inspected his cruiser at the beginning of his shift, and because no one else had been in the backseat of his cruiser, the officer believed the drugs belonged to appellant.  Therefore, Officer Kriebel re-assumed custody of appellant and transported him to the Austintown Police Department for booking on drug-related charges.

{¶6}    A Mahoning County Grand Jury subsequently indicted appellant on one count of tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1)(B); one count of possession of heroin in an amount that equals or exceeds five grams but is less than ten grams, a third-degree felony in violation of R.C. 2925.11(A)(C)(6)(c); and one count of aggravated possession of drugs for possessing Fentanyl in an amount that does not equal or exceed the bulk amount, a fifth-degree felony in violation of R.C. 2925.11(A)(C)(1)(a).

{¶7}    The matter proceeded to a jury trial where the jury heard from the arresting officer, appellant, the lieutenant who submitted the drugs for testing, and the chemist who tested the drugs.  The jury found appellant guilty of all charges.

{¶8}    The trial court subsequently sentenced appellant to a prison term of two years for tampering with evidence; one year for possession of heroin, to be served consecutively to the tampering with evidence sentence; and one year for aggravated possession, to be served concurrently with the other two sentences.  Thus, appellant's total sentence is three years.

{¶9}    Appellant filed a timely notice of appeal and now raises a single assignment of error.

{¶10}   Appellant's assignment of error states:

APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE; NOR WAS THEIR [sic.] SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF THE CRIMES IN WHICH HE WAS CHARGED WITH.

{¶11}   Appellant asserts that his convictions were not supported by the sufficiency of evidence or the manifest weight of the evidence.

{¶12}   As to his drug possession convictions, appellant points out that Officer Kriebel searched him before placing him in the patrol car.  The search did not reveal any drugs.  Additionally, he notes that the officer searched his car and did not locate any drugs.  Appellant argues the state failed to present any evidence that he was ever in possession of the drugs that were found in the back of the police cruiser.  He notes that he was handcuffed and in the presence of Officer Kriebel the entire time.  Thus, appellant claims there was no evidence connecting him to the drugs located in the police cruiser.

{¶13}   As to his tampering with evidence conviction, appellant first argues that Officer Kriebel did not observe appellant remove anything from his person and place it on the floor of the cruiser and did not observe appellant attempt to conceal anything.

{¶14}   Appellant goes on to argue that regardless of his actions and independent of the drug possession charges, there is no evidence to support his tampering with evidence conviction. He points out that he was initially taken into custody on a seatbelt warrant.  And prior to that he was stopped for running a stop sign and then detained for driving with a suspended license.  Appellant argues that in order to support a conviction for tampering with evidence, the law requires that he be under investigation or would likely be under investigation for a crime directly involving the evidence in which he allegedly tampered with.  But he was only under investigation and in custody for traffic-related offenses.  Appellant argues an investigation into possession of drugs did not start until Officer Kriebel found the drugs in his backseat.  Up until that time, appellant asserts, there was no indication that he was under investigation for any drug-related crime.  On this basis, he asserts we must overturn his tampering with evidence conviction.

{¶15}   We must examine each of appellant's convictions to determine if they are supported by the sufficiency of the evidence.  We must then move on to determine if his convictions are against the manifest weight of the evidence.

{¶16}   Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict.  *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).  In essence, sufficiency is a test of adequacy.  *State v. Thompkins*, 78 Ohio

St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶17}** We must examine the state's evidence to determine whether appellant's convictions were supported by sufficient evidence.

**{¶18}** Officer Kriebel testified first. Officer Kriebel stated that per department policy, at the beginning of his shift he inspects the inside and the outside of the police cruiser he will be using. (Tr. 234-235). On September 27, 2017, at the beginning of his shift, Officer Kriebel also had time to clean the inside and outside of his cruiser, including vacuuming and wiping down the floorboards. (Tr. 236). While he was cleaning, Officer Kriebel searched the interior of the cruiser. (Tr. 237). He did not find anything during his search and cleaning. (Tr. 237).

**{¶19}** Officer Kriebel also described the interior of the cruiser. He stated that there is one partition that separates the front seat from the back seat. (Tr. 236). That partition goes down to the floorboard so that nothing can roll on the floor from the front to the back or vice versa. (Tr. 236-237). There is a second partition in the back from the ceiling to the floor that separates the rear driver-side seat from the rear passenger-side seat. (Tr. 237).

**{¶20}** After cleaning his cruiser on the day in question, Officer Kriebel left the station. He encountered appellant and observed appellant failure to stop at a stop sign. (Tr. 239). He subsequently stopped appellant's car. (Tr. 239). Officer Kriebel asked appellant for his driver's license, registration, and proof of insurance. (Tr. 241). Appellant was unable to provide these items but he did provide the officer with his social security number. (Tr. 241). Based on the social security number, Officer Kriebel learned that appellant had a suspended driver's license and an outstanding warrant from Youngstown Municipal Court for a seatbelt violation. (Tr. 242). The officer then called for backup. (Tr. 242).

**{¶21}** Once his backup arrived, Officer Kriebel had appellant step out of the car. (Tr. 243). He testified that he patted appellant down in a search for weapons. (Tr. 243).

He did not locate any weapons. (Tr. 243-244). The officer then allowed appellant to call his son's mother so she could pick up their son who had been in the car with appellant. (Tr. 245).

**{¶22}** After the mother picked up the child and the car, the officer handcuffed appellant while he was seated in the backseat of the police cruiser. (Tr. 248). Officer Kriebel stated that he handcuffed appellant's hands in front of him. (Tr. 248). He admitted this was a mistake and he should have handcuffed appellant's hands behind his back. (Tr. 250). Officer Kriebel stated that he had made arrangements to meet Youngstown police officers at a gas station to transfer appellant to them so that they could handle the issue of his outstanding warrant. (Tr. 251-252). The Youngstown officers would then take appellant to the county jail for processing. (Tr. 252).

**{¶23}** While Officer Kriebel was driving appellant, appellant was seated behind the front passenger seat. (Tr. 253). The officer testified that through the rearview mirror he noticed appellant placing his head down to his lap as if he was wiping sweat on his shorts. (Tr. 254). Officer Kriebel stated that he told appellant several times not to do that but appellant continued. (Tr. 254). At that point, the officer testified, he suspected that something was going on. (Tr. 254).

**{¶24}** When the Youngstown officers arrived, appellant was able to get out of the back of Officer Kriebel's cruiser. (Tr. 256). Officer Kriebel testified that once appellant got out of his cruiser, he looked down to where appellant had been seated. (Tr. 257). He then noticed a plastic bag containing some rocks on the floorboard where appellant's feet had just been. (Tr. 257). The rocks in the bag contained heroin and Fentanyl. (Tr. 258).

**{¶25}** Officer Kriebel testified that appellant repeatedly denied that the drugs belonged to him. (Tr. 258). Officer Kriebel then placed appellant under arrest for drug possession and transported him to the Austintown Police Department for processing. (Tr. 260). During a phone call appellant made from the police station, Officer Kriebel heard appellant tell someone, "I didn't admit shit, so they gonna lose this case rather [sic] he clean his car or not." (Tr. 262). Officer Kriebel testified that no one else had been in the backseat of his cruiser that day. (Tr. 262).

**{¶26}** Whitney Voss is a forensic scientist in the drug chemistry unit at the Bureau of Criminal Identification and Investigation (BCI). She tested the suspected drugs in this

Case No. 18 MA 0131

case. Voss's testing revealed that the rocks contained 7.31 grams of heroin, Fentanyl, and cocaine. (Tr. 295).

**{¶27}** Austintown Police Lieutenant Jeffrey Solic is assigned to the Mahoning County Drug Task Force. Lt. Solic field tested the drugs in this case before sending them to BCI. He stated that the field tests were positive for heroin and Fentanyl. (Tr. 305-306). Lt. Solic also testified that he has been involved in several thousand drug investigations over the course of his career. (Tr. 312). Based on his experience, he testified that it has become quite common for drug suspects to hide their drugs in their genitals, in their body cavities, in their shoes and socks, and in layers of clothing. (Tr. 313-314). He stated that the drugs are not generally found during a pat-down but are found during a full body scan when the suspects are brought to jail. (Tr. 314).

**{¶28}** Lt. Solic also testified regarding Austintown police procedures. He stated that it is police policy that the officer check his or her cruiser at the beginning of a shift and before and after anyone is in the back seat. (Tr. 315).

**{¶29}** The jury convicted appellant of possession of heroin in an amount that equals or exceeds five grams but is less than ten grams. And it convicted him of aggravated possession of drugs for possessing Fentanyl in an amount that does not equal or exceed the bulk amount. Pursuant to R.C. 2925.01(K), "'[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶30}** A defendant's conviction for drug possession can be based upon circumstantial evidence of possession. *State v. DeSarro*, 7th Dist. Columbiana No. 13 CO 39, 2015-Ohio-5470, ¶ 41. When drugs are readily usable and found in very close proximity to a defendant these facts may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of the drugs. *State v. Barker*, 7th Dist. Jefferson No. 05-JE-21, 2006-Ohio-1472, ¶ 78, quoting *State v. Kobi*, 122 Ohio App.3d 160, 174, 701 N.E.2d 420 (1997).

**{¶31}** Viewing the evidence in the light most favorable to the state, as we are required to do when examining whether sufficient evidence supports a conviction, there were no drugs present in the back seat of Officer Kriebel's cruiser before appellant got in.

Officer Kriebel testified that he personally cleaned and inspected his entire cruiser, including the back seat area at the beginning of his shift. He also testified that appellant was the first person to sit in his cruiser after his shift started. Officer Kriebel additionally testified that there was no way for something to roll from the front of the cruiser to the back. Next, Officer Kriebel testified that while he was transporting appellant, appellant repeatedly brought his head down toward his lap. And when appellant got out of Officer Kriebel's cruiser, the officer found the bag of drugs on the floor where appellant's feet had been. Taking all of this circumstantial evidence together supports a conclusion that appellant had possession of the drugs. Moreover, Voss testified that drugs contained 7.31 grams of heroin, Fentanyl, and cocaine. Thus, there is sufficient evidence to support both of appellant's drug possession convictions.

**{¶32}** The jury also convicted appellant of tampering with evidence in violation of R.C. 2921.12(A)(1), which provides: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

**{¶33}** Appellant argues that he was only under investigation for traffic-related offenses. Because there was no drug investigation in progress, he contends he could not have altered, destroyed, or concealed the drugs with the purpose to impair its availability in a drug investigation.

**{¶34}** Appellant relies on the case of *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2129, 11 N.E.2d 1176. In *Straley*, officers stopped Straley when they noticed erratic driving. *Id.* at ¶ 2. The officers then noticed that Straley exhibited slurred speech and she could not produce her driver's license. *Id.* Straley consented to a search of her vehicle, in which the officers did not find any contraband. *Id.* The officers decided not to pursue any charges but would not allow Straley to drive home. *Id.* at ¶ 3. They decided they would drive Straley home. *Id.* While they were obtaining permission to drive her home, Straley indicated that she had to urinate. *Id.* She moved away from the officers, pulled down her pants, and urinated. *Id.* Afterwards, one of the officers walked back to the area where Straley had been and saw a clear cellophane baggie covered with urine. *Id.* at ¶

Case No. 18 MA 0131

4. Inside the baggie there appeared to be crack cocaine. *Id.* The officers then placed Straley under arrest. *Id.*

**{¶35}** Straley entered no contest pleas to drug charges and was convicted at a jury trial of tampering with evidence. *Id.* at ¶ 6. On appeal, the Second District reversed the conviction for tampering with evidence finding that nothing in the record supported a finding that Straley acted with purpose to impair the value of evidence of any ongoing investigation, i.e., of driving under the influence of alcohol or driving without a license, or of any likely investigation, i.e., of public urination. *Id.* at ¶ 7. The Second District then certified a conflict with the Ninth District on the question of "[w]hether a tampering conviction requires proof that the defendant impaired evidence in an investigation by tampering with evidence related to the investigation." *Id.* at ¶ 8.

**{¶36}** The Ohio Supreme Court answered the certified question in the affirmative. It held that "[a] conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *Id.* at the syllabus. The Court further stated that the evidence tampered with must have some relevance to an ongoing or likely investigation in order to support a tampering with evidence charge. *Id.* at ¶16.

**{¶37}** *Straley* is distinguishable, however, because at the time Straley discarded the drugs on her person, she was not under arrest and was not going to be transported to jail. The officers were going to give her a ride home. Thus, there was no indication that the drugs would have been discovered or that an official investigation was likely.

**{¶38}** Another case is more instructive to the specific facts of this case. In *State v. Cabrera*, 9th Dist. Lorain No. 13CA010434, 2014-Ohio-3372, an officer performed a random check on the license plate. Upon discovering that the plates had expired and were registered to a different car, the officer initiated a traffic stop. *Id.* at ¶ 2. The driver, Cabrera, admitted to the officer that his driver's license was suspended. *Id.* at ¶ 3. The officer had Cabrera exit the car and the officer handcuffed him and placed him in the back seat of his cruiser. *Id.* After transporting Cabrera to jail, the officer searched the back seat of his cruiser and discovered five hydrocodone pills underneath the seat cushion near where Cabrera had been sitting. *Id.* at ¶ 4. Cabrera was subsequently convicted of

tampering with evidence, possession of a controlled substance, and driving under suspension. *Id.*

{¶39} On appeal, Cabrera argued his conviction for tampering was against the manifest weight of the evidence. He asserted he was handcuffed, with his hands behind his back, and was searched prior to being placed in the cruiser. *Id.* at ¶ 16. The Ninth District noted, however, that the officer testified that, in his pat down of Cabrera, he was searching for weapons, not pills. *Id.* The officer further testified that he had searched underneath the back seat at the start of his shift, the pills were found immediately after transporting Cabrera to jail, and Cabrera was the only person that had been in the back of the cruiser during the time in between the two searches. *Id.*

{¶40} Given these facts, the Ninth District found:

> While Cabrera was initially arrested for driving under suspension, he knew that he was going to jail when he was handcuffed and placed in the back seat of Officer Gelenius' cruiser. Any illegal drugs possessed by Cabrera at the time he was admitted into the jail would likely have been discovered and investigated. Therefore, at the point that Cabrera was handcuffed and placed in the back of the police cruiser, the hydrocodone pills on his person were evidence of a "likely official investigation" and his actions of hiding them underneath the back seat was "intended to impair the value or availability of evidence related" to that likely investigation. See *Straley*, Slip Opinion No. 2014-Ohio-2139, at syllabus.

*Id.* at ¶ 17.

{¶41} The facts of *Cabrera* are nearly identical to the facts of this case. Once appellant was placed under arrest for the outstanding traffic-related warrant, he knew he was on his way to jail. Any illegal drugs on his person at that time would likely be discovered once he was processed at the jail and an investigation would then ensue. Thus, at the point appellant was placed under arrest and placed in the back of Officer Kriebel's cruiser, the baggie of drugs was evidence of a likely official investigation. Furthermore, appellant's action of removing them from his person and discarding them in

the back of the cruiser was intended to impair the value or availability of the drug evidence related to the likely investigation.

**{¶42}** Thus, in this case the evidence was sufficient to support appellant's tampering with evidence conviction.

**{¶43}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id*. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id*. at 390.

**{¶44}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. Belmont No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99-CA-149, 2002-Ohio1152.

**{¶45}** In order to reverse a jury verdict as against the manifest weight of the evidence, all three appellate judges must concur. *Thompkins*, 78 Ohio St.3d at 389.

**{¶46}** In addition to the state's evidence set out above, in conducting a manifest weight analysis we must also consider the evidence appellant put on in his defense and the state's rebuttal evidence.

**{¶47}**    Appellant testified on his own behalf.  Appellant testified that when Officer Kriebel stopped him, he was not able to provide a driver's license or proof of insurance but did provide the officer with his social security number.  (Tr. 327-328).  Appellant stated that he believed he might be arrested for driving without a license.  (Tr. 328).  He stated that the officer allowed him to call his child's mother to pick the child up.   (Tr. 332).  After his child was picked up, Officer Kriebel told appellant he was taking him into custody for a seatbelt warrant.  (Tr. 333).  He stated the officer conducted a pat-down search of him where the officer grabbed his pockets and patted his waistband.  (Tr. 335).  The officer then placed appellant in the cruiser and handcuffed his hand in front of him.  (Tr. 335).

**{¶48}**    Appellant testified that Officer Kriebel then began driving to the gas station where they were to meet the Youngstown police.  (Tr. 336).  He stated that it was very hot and he was sweating. (Tr. 336).  Appellant testified that he used his knee to wipe the sweat off of him. (Tr. 337).   When they arrived at the gas station, Officer Kriebel got appellant out of the cruiser.  (Tr. 338).  Appellant testified that the officer then said that he found something and held a baggie up.  (Tr. 338).  Appellant immediately told the officer it was not his.  (Tr. 339).  He stated he asked Officer Kriebel to check his camera.  (Tr. 339).  Officer Kriebel then transported appellant to the Austintown police department and he repeatedly told the officer that the baggie of drugs was not his.  (Tr. 341).

**{¶49}**    Appellant stated that at the time of his arrest, he was wearing loose fitting basketball shorts, no socks, "house shoes," and a tight tee-shirt.  (Tr. 343-344, 352).

**{¶50}**    On rebuttal, the state called Mahoning County Sheriff Deputy Mary Jane Greene.  Deputy Greene worked in intake at the county jail on the day appellant was brought in.  She testified that during intake, the deputies record everything an arrestee is wearing and all property they come into the jail with.  (Tr. 371).  Referring to the jail's records, Deputy Greene was able to testify that when appellant was brought to the jail on September 27, 2017, he was wearing a hat, a tee-shirt, pants, underwear, athletic shoes, and a pair of socks.  (Tr. 372-373).

**{¶51}**    Here the jury was faced with deciding whether to believe appellant's testimony that the drugs were not his or the circumstantial evidence supported by Officer Kriebel's testimony.  The jury clearly believed Officer Kriebel and found appellant to be not credible.  We should not second-guess the jury's credibility determinations as the jury

was in the best position to observe the witnesses' gestures, voice inflections, and demeanor. *Rouse*, 2005-Ohio-6328, ¶ 49, citing *Hill*, 75 Ohio St.3d at 205.

{¶52} Moreover, even though Officer Kriebel searched appellant before placing him in the cruiser, this was simply a pat-down of appellant's clothing to locate any potential weapons. The officer did not look in appellant's shoes or socks and did not reach underneath appellant's clothing. Appellant easily could have had a small baggie of drugs concealed somewhere on his person that was not readily discoverable during a pat-down search.

{¶53} Based on the above, appellant's convictions are not against the manifest weight of the evidence.

{¶54} Accordingly, appellant's sole assignment of error is without merit and is overruled.

{¶55} For the reasons stated above, the trial court's judgment is hereby affirmed.


Waite, P. J., concurs.

Robb, J., concurs.

Case No. 18 MA 0131

_____

For the reasons stated in the Opinion rendered herein, the sole assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

_____

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**