[Cite as *State v. K.A.T.*, 2021-Ohio-4293.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

K.A.T.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MA 0097**

---

Criminal Appeal from the
Mahoning County Court No. 2 - Boardman, Mahoning County, Ohio
Case No. 2019 CRB 1315

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Paul Gains*, Prosecutor, *Atty. Ralph Rivera,* Assistant Prosecutor, *Atty. Stephen Maszczak,* Assistant Prosecutor, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Louis DeFabio*, 4822 Market Street, Suite 220, Boardman, Ohio 44512, for Defendant-Appellant.

Dated:
December 6, 2021

**Donofrio, J.**

{¶1}   Defendant-appellant, K.A.T., appeals from a Mahoning County Court Number 2 judgment finding him guilty of violating a protection order.

{¶2}   Appellant is a 24-year-old man who has been diagnosed with high functioning autism.  At the time of the incident in question, he lived with his parents in Boardman, Ohio.  J.F. is appellant's next-door neighbor. J.F. has a protection order against appellant that protects him and his family.

{¶3}   The facts of the case are undisputed.  On September 6, 2019, appellant was home alone.  J.F. was also home alone and was outside in his backyard watering his garden.  Appellant's bedroom window can be seen from J.F.'s backyard.  J.F. heard yelling coming from appellant's house, which is not uncommon.  J.F. could not make out the words at first but he did recognize appellant's voice.  Eventually he heard appellant yell the words, "you think you're safe, but you're not."  At first, he ignored the words and kept watering.  Shortly after this, he heard appellant yell, "you call the police at the first sign of danger."  J.F. felt threatened at this point so he called the police.

{¶4}   The police arrived at appellant's house and told him that he was being too loud and that J.F. believed that the threatening words were being directed at him.  Appellant told the police he would quiet down.  J.F. did not hear anymore from appellant that day.

{¶5}   On September 18, 2019, a warrant for appellant's arrest was issued.  Appellant was arrested the following day for violation of the protection order.  The matter proceeded to a bench trial.

{¶6}   On July 30, 2020, the trial court found appellant guilty of violating the protection order.  The court sentenced appellant to 180 days in jail, all suspended, 12 months of community control, and a $150 dollar fine plus court costs.  The trial court stayed appellant's sentence pending this appeal.

{¶7}   Appellant filed a timely notice of appeal on August 24, 2020.

{¶8}   Appellant now raises a single assignment of error that states:

THE TRIAL COURT'S VERDICT OF GUILTY AS TO THE VIOLATING A PROTECTION ORDER CHARGE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} Appellant argues that there was not sufficient evidence presented to show that he had directed his comments at J.F. He notes that the mens rea needed for violating a protection order is recklessly, and that his behavior was not reckless. Appellant also argues that his conviction is against the manifest weight of the evidence, again saying that his behavior was not reckless in nature.

{¶10} The trial court convicted appellant of violating R.C. 2919.27(A)(1), which provides that no person shall recklessly violate the terms of a protection order or consent agreement issued pursuant to R.C. 2919.26 or R.C. 3113.31. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶11} The protection order in this case provides in part:

1. **RESPONDENT SHALL NOT ABUSE** the protected persons named in this Order by harming, attempting to harm, threatening, following, stalking, harassing, forcing sexual relations upon them, or by containing sexually oriented offenses against them.

(Plaintiff's Ex. 1; emphasis sic.).

{¶12} First, we must examine whether appellant's conviction is supported by sufficient evidence.

{¶13} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict

is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113. When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *State v. Thorn*, 7th Dist. Belmont No. 16 BE 0054, 2018-Ohio-1028, ¶ 34, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

{¶14} A sufficiency of the evidence challenge tests the burden of production while a manifest weight challenge tests the burden of persuasion. *Thompkins* at 390 (Cook, J., concurring). Therefore, when reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbough*, 95 Ohio St.3d 516, 543, 2002-Ohio-2126, 747 N.E.2d 216, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id.* at ¶ 82.

{¶15} The State's only witness was J.F. J.F. confirmed that there was a protection order against appellant that protected himself and his family. (Tr. 9). He testified that on the day in question, he was home alone outside watering his garden in his backyard. (Tr. 10). He stated that he heard yelling coming from appellant's house. (Tr. 10). J.F. looked at the window where the yelling was coming from and the yelling stopped. (Tr. 11). He continued to water his garden and the yelling began again. (Tr. 11). This time he heard a phrase that he was able to make out. (Tr. 11). J.F. stated he heard the voice yelling from appellant's house say, "you think you're safe, but you're not." (Tr. 11). J.F. again stared at the window and the yelling stopped again. (Tr. 11). J.F. believed that the "you" was directed at him. (Tr. 28). J.F. continued to water his garden, but then heard the voice say, "you call the police at the first sign of danger." (Tr. 11). He recognized the voice as appellant's and immediately went inside and called the police. (Tr. 11-12).

{¶16} On cross examination, J.F. stated that he had not seen appellant or appellant's silhouette in the window. (Tr. 18). J.F. further testified appellant's mother had told him that appellant was diagnosed with Asperger's. (Tr. 21.). J.F. testified that he felt threatened on the day in question and he felt that the words he heard were directed

toward him. (Tr. 22-23). J.F. also testified that he did not hear any more disturbances from appellant's house that day after he called the police. (Tr. 24).

**{¶17}** Viewing this evidence in the light most favorable to the state as we are required to do when addressing a sufficiency of the evidence challenge, we conclude that there was sufficient evidence for the court to convict appellant.

**{¶18}** The state presented evidence that a protection order was in place and that per the terms of the order appellant was not to threaten J.F. or his family. J.F. testified that while he was in his backyard, he heard yelling coming from appellant's window. J.F. further testified that he recognized appellant's voice yell two threatening statements, which he believed to be directed at him. Moreover, when he twice looked to appellant's window, appellant's yelling stopped both times.

**{¶19}** Appellant contends the state failed to prove that he acted recklessly. But in this case, the state presented sufficient circumstantial evidence to prove appellant acted recklessly. Circumstantial evidence has the same probative value as direct evidence. *Thorn*, 2018-Ohio-1028, at ¶ 34, citing *Jenks*, 61 Ohio St.3d at 272-273. Appellant knew that there was a protection order in place and that he was not to threaten J.F. or his family. Nonetheless, he yelled threatening comments from his home so loudly that J.F. could hear them while he was in his own backyard. Whether appellant intended to threaten J.F. or not, his conduct demonstrated a "heedless indifference" to the risk that J.F. might hear these threatening words that were in violation of the protection order.

**{¶20}** Thus, the state presented sufficient evidence so that the trial court could find the essential elements of violating a protection order proven beyond a reasonable doubt.

**{¶21}** Next, we must determine if appellant's conviction was against the manifest weight of the evidence.

**{¶22}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d 380. "Weight of the evidence concerns 'the inclination of the *greater amount of credible*

*evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶23}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. Belmont No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99-CA-149, 2002-Ohio-1152.

**{¶24}** *Thompkins* addressed a manifest weight argument in the context of a jury trial. But the standard of review is equally applicable when reviewing a manifest weight challenge from a bench trial. *State v. Layne*, 7th Dist. Mahoning No. 97 CA 172, 2000 WL 246589, at *5 (Mar. 1, 2000). A reviewing court will not reverse a judgment as being against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Hill*, 7th Dist. Mahoning No. 09-MA-202, 2011-Ohio-6217, ¶ 49, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988).

**{¶25}** In reviewing a manifest weight challenge, in addition to the evidence put forth by the state, we must also consider the evidence put forth by the defense.

**{¶26}** Appellant testified in his own defense. Appellant was shown exhibits that were photos of a room, and he confirmed that they were pictures of his bedroom and bedroom window specifically. (Tr. 32-33; Defense Exs. A, B, C, D). He testified that normally the leaves of an outside tree cover half of his window. (Tr. 32). He also pointed out that there is a stained glass like film that covers the bottom half of the window, and a

painting that covers the top half. (Tr. 33). Appellant said he covered the window like this because he liked how the stained glass made his room look, and also because J.F. installed lights that shine into his room through the top half of the window, so he wanted to block that light. (Tr. 34-35).

{¶27} Appellant testified that on the day in question he was home alone. (Tr. 35). He testified that he is an aspiring actor, so he does performance arts often, and puts on plays and does vocal performances. (Tr. 36). He went on to say that this is what he was doing that day in his room, but that none of it was being recorded. (Tr. 36). Appellant admitted that he did say the words that J.F. claimed to have heard. (Tr. 37). He testified that the words were not directed at J.F., but rather part of a skit he was performing. (Tr. 37). He stated he was probably facing his window at the time. (Tr. 37). Appellant testified that he was unaware J.F. was outside at the time, however. (Tr. 38). Appellant then said the police came to his house and told him that he was being too loud, and that J.F. believed the words were directed towards him. (Tr. 39). He told them he would try to be quieter in the future. (Tr. 39).

{¶28} Appellant then testified that he takes the protection order very seriously. (Tr. 40). He said that it is important for people to feel safe, so he goes out of his way to avoid J.F. (Tr. 40).

{¶29} On cross examination, appellant again confirmed that he said the words that J.F. claimed to have heard. (Tr. 42). Then he described in further detail the scene of the play he claimed to have been working on at the time when the words were said. (Tr. 43). Lastly, appellant confirmed that J.F. had called the police on him in the past, and he was sent to a psych ward over some misunderstandings. (Tr. 44).

{¶30} Defense counsel then called Kathleen, appellant's mother, to the witness stand. She testified that appellant had been diagnosed with posttraumatic stress disorder and high functioning autism. (Tr. 46).

{¶31} Kathleen further claimed that appellant is very loud and that she can hear him throughout the house when he is doing his performances. (Tr. 49-50). Kathleen then testified that on that morning, appellant called and told her that the police were at the house. (Tr. 54). She left work and went home at that point. (Tr. 54). Lastly she said that appellant was not loud for the remainder of that day. (Tr. 54).

**{¶32}** On cross examination, Kathleen confirmed that she was not home when the words that J.F. heard were said by appellant. (Tr. 56). She admitted that she did not know if these words were said or not, other then what appellant told her and what the police reports said. (Tr. 56).

**{¶33}** The trial court believed J.F.'s testimony as truthful. J.F. had a protection order against appellant and felt threatened by appellant's words on the day in question, which is exactly what the protection order is meant to prevent. Based on the evidence presented, we cannot conclude that the trial court lost its way and created a manifest miscarriage of justice in convicting appellant. Therefore, appellant's conviction is not against the manifest weight of the evidence.

**{¶34}** Because the conviction is supported by sufficient evidence and is not against the manifest weight of the evidence, appellant's assignment of error is without merit and is overruled.

**{¶35}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.
D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Mahoning County Court No. 2 – Boardman of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**